IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.  CAUSE NO. 3:21CR077

AUBREY S. SUZUKI

MOTION TO DISMISS

Defendant, Aubrey Suzuki, by and through counsel, files this motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b), and in support would show as follows:

BACKGROUND

Mr. Suzuki was indicted on August 25, 2021 with one count threatening to kill a law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B), three counts of threatening communications in interstate commerce in violation of 18 U.S.C. § 875(c), and one count of providing a false statement to a federal agency in violation of 18 U.S.C. § 1001. *See* Indictment [26].

The prosecution contends that Mr. Suzuki frequently participated in online chatrooms using the screenname "ArchRain" to post messages on Wire, an encrypted message platform. During these chats, it is alleged Mr. Suzuki posted numerous messages regarding racist ideologies, racial violence, weapons, explosives, and the overthrow of the United States government. *Id*. at 2.

Specifically, as to Count 1 and 2, the prosecution alleges that the following text message constituted a threat to kill a law enforcement officer and sending a threat via interstate commerce:

–1–



As to Counts 3 and 4, the prosecution alleges that the following text messages form the

–2–

basis for sending threats via interstate commerce:

Count 3:



Count 4:



Finally, as to Count 5, the prosecution alleges that Mr. Suzuki knowingly and intentionally made a materially false statement on a United States Navy Aberrant Behavior Screening Certificate by initialing his answer NO to the question: "I have been/am now a member of a racially biased group or an organization that advocated the degradation of cultures of human races other than my own."

| UNITED STATES NAVY ABERRANT BEHAVIOR SCREENING CERTIFICATE | |
|---|---|
| SUZUKI, AUBREY, SAKAI | 9218 |
| Type/Print Name of Applicant (Last, First, Middle): | Social Security Number |

**Section I - Privacy Act Statement**

*Authority.* The authority to request this information is contained in Sections 504, 505, 510, 511, and 802 of Title 10, U.S. Code as amended.

*Principal Purpose or Purposes.* The information in this document is used to determine your present enlistment eligibility.

*Routine Uses.* The information provided by you will become a part of your SERVICE RECORD residual file. This information constitutes the minimum required to determine you present enlistment eligibility. The information provided by you on this document is FOR OFFICIAL USE ONLY and will be maintained and used in strict confidence in accordance with Federal Law and Regulations.

*Whether disclosure is Mandatory or Voluntary and Effect on Individual for Not Providing Information.* The information requested is of personal and confidential nature, and you do not have to provide such information unless you voluntarily wish to enlist in the United States Navy. Failure to answer completely any of the questions or to provide the information requested may result in an inability to fairly evaluate your enlistment eligibility and may result in a subsequent denial for enlistment.

**Section II - Definitions**

*Aberrant Behavior.* Involvement with groups or organizations advocating violence or illegal activities. Participation in such activities, whether with such groups or individually.

*Racially Biased Group.* A group or organization, which exhibits a negative disposition and prejudicial attitudes against an entire class of persons based solely on racial differences.

*Gang Related Violence.* Violent activity or behavior stemming from involvement in an association with an organized group which advocates or engages in criminal activity.

*Hate Crimes.* Criminal behavior or activities, which illegally discriminate on the basis of race, creed, gender or national origin.

| Section III - Aberrant Behavior | Applicant Initial Yes | Applicant Initial No |
|---|---|---|
| 1. I have been/am now a member of a racially biased group or an organization that advocated the degradation of cultures or human races other than my own. | | ASS |
| 2. I have participated in violent acts committed against a person of a different race. | | ASS |
| 3. I have been cited, charged or arrested for a hate crime. | | ASS |
| 4. I have been or am now a member of a gang. | | ASS |
| 5. I have participated in an initiation to gain acceptance to a group or gang. | | ASS |
| 6. I have committed illegal acts to gain acceptance to a group or gang. | | ASS |
| 7. I certify that I have completed this certificate honestly of my own free will, without concealing any information. | ASS | |

SUZUKI, AUBREY, SAKAI
Tamper Evident Biometric Signature — Digitally signed by Tamper Evident Biometric Signature Date: 2020.10.05 15:18:20 -05'00'
Applicant Signature — Date: 20201005

**Section IV - Recruiter Certification**
I certify that the above applicant signed this certificate of their own free will after telling me that their answers are complete and true.

| ET1 DEMAREST, NICOLE, ROSE | DEMAREST.NICOLE.ROSE.1501222395 Digitally signed by DEMAREST.NICOLE.ROSE.1501222395 Date: 2020.10.05 15:18:55 -05'00' | 20201005 |
|---|---|---|
| Type/Print Name of Recruiter (Last, First, Middle): | Recruiter Signature | Date |

NAVCRUIT 1130/120 (Rev 05-2010)    For Official Use Only - Privacy Sensitive    [Save]

Because none of the counts satisfy the legal elements of each charge, the Indictment must be dismissed[1].

## ARGUMENT

**<u>Counts 1-4 do not constitute a "true threat" because all of the messages were spoken in jest.</u>**

Mr. Suzuki contends that his speech is protected and cannot constitute a "true threat." The first four of five counts in the Indictment must be read in context, and not isolated as contained in the Indictment.

The First Amendment states "Congress shall make no law… abridging the freedom of speech." U.S. CONST., AM 1. "As a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *United States. v. Stevens*, 559 U.S. 460, 468 (2010). The Supreme Court has explained, however, that "[t]he protections afforded by the First Amendment ... are not absolute, and ... the government may regulate certain categories of expression consistent with the Constitution." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (addressing whether cross-burnings are constitutionally protected speech or "true threats"). For example, threats of violence are not protected by the First Amendment. *Id*. at 359. The Supreme Court has cautioned that where a statute "makes criminal a form of pure speech, [it] must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969) (distinguishing constitutionally protected speech, such as political hyperbole, from a threat).

The Supreme Court has defined "true threats" as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359 (2003). The question

---

[1] Defense counsel is filing Exhibits 1-3 under seal due to the sensitive nature of the documents.

becomes even more difficult to answer when, where as here, the subject or manner of expression is "uncomfortable and challenges conventional religious beliefs, political attitudes or standards of good taste." *United States v. Cassidy*, 814 F.Supp.2d 574, 582 (D. Md. 2011); citing *United States v. Stevens*, 559 U.S. 460 (2010). Further, the Supreme Court has "consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. This is because 'in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate breathing space" to the freedoms protected by the First Amendment.' " *Id*. The type of speech used by Mr. Suzuki and the people within the chat room exemplifies the protections safeguarded by the First Amendment.

As discussed by this court, the 'true threat' category of unprotected speech is the least developed exception to the First Amendment. *United States v. Cook*, 472 F. Supp. 3d 326, 332–33 (N.D. Miss. 2020). The Supreme Court has only discussed true threats in a handful of cases, largely leaving Circuit Courts to develop their own approach. The Second Circuit in *United States v. Kelner*, has developed a particularly detailed approach stating that a true threat is one that "on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate, and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." 534 F.2d 1020, 1027 (2nd Cir. 1976). These elements are absent in Mr. Suzuki's comments.

The Fifth Circuit's established approach is to ask whether a communication "in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Myers*, 104 F.3d 76, 79 (5th Cir. 1997). The Fifth Circuit has discussed the Second Circuit's analysis in *Kelner*, and has stated that "immediacy, or clarity of purpose, ... was the key to distinguishing true threats." *Shackelford v. Shirley*, 948 F.2d 935, 939 (1991).

The Fifth Circuit has also stated that to distinguish "political hyperbole" from a "true

threat," the statements must be analyzed "in context" to determine if they are true threats punishable by law. *Morales*, 272 F.3d 284, 287 (5th Cir. 2001). Further, "[i]n order to convict, a fact finder must determine that the recipient of the in-context threat reasonably feared it would be carried out." *Id*.

Further, a "threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him, and a threat is willfully made if in addition to comprehending his words, the maker voluntarily and intelligently utters the words as a declaration of an apparent determination to carry out the threat." *United States v. Pilkington*, 583 F.2d 746, 747 (5th Cir. 1978) (citation omitted). In other words, a communication is a threat under § 875(c) if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001); *see also United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997), citing *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974).

To prove a true threat, the prosecution has relied on screenshots of messages sent by Mr. Suzuki to a private chat room consisting of other like-minded individuals. *See supra* pgs. 2, 3, 4. The texts read as follows:

> Counts 1 and 2 = "So when are we going to pull a Turner Diaries and drive a truck with explosives to the FBI headquarters?"
>
> Count 3 = "Honestly I don't want to be a normal person. I want to breath revolution. I want to be in the middle of the boondocks with my mates killing niggers spics faggots and blowing up the system."
>
> Count 4 = "I think IEDs will be the most practical method of terror to start out with. Worked very well for al-Qaeda. Target majority nigger or jewish buildings, synagogues, federal establishments, etc,"

Even when read in isolation, the texts do not appear to satisfy the definition of true threat. Moreover, when read in the context of other chat messages, according to *Myers*, no rational trier of fact could believe a true threat had been made. The messages contain chest puffing, attempted

humor, and statements made in jest, among discussion of purchasing weapons and such. This group message was nothing more than a few people who harbored similar views as Mr. Suzuki and talked about the Nationalist Socialist Order, pro-communism, admiration of Hitler and other fascist leaders, the purchasing of weapons for upcoming riots, and how minority groups are less than the Aryan race. There was never mention of actual action being taken or fulfilling the threats allegedly made by Mr. Suzuki. What the *Watts* Court required was that the threat be a "true threat" and not such protected speech as political hyperbole or argument, idle talk, debate, jest and the like which is exactly what this chatroom was.

Specifically, Counts 1 and 2, the recipients laugh at Mr. Suzuki's comment, jokingly responding, "Guys I'm afraid a federal agent has commandeered the computer of our friend ArchRain" and "LOL," which stands for laugh out loud. Dictionary.com states that LOL is "used as a response to something funny or as a follow-up to something said only as a joke." *See* https://www.dictionary.com/browse/lol. Not one member of the chat group, all of whom seemingly shared similar political ideologies, realistically believed Mr. Suzuki was serious about blowing up FBI headquarters with a truck full of explosives. The comments are not a true threat.

As to Counts 3 and 4, neither text specifies a threat. Mr. Suzuki's comments discuss potential violence against minority groups, but never suggest that he will follow through with action or if he was serious about those statements. Reading through all of the chat messages, it is clear that Mr. Suzuki and his friends harbor certain beliefs against certain minority groups. However, the messages from the group are nothing more than chest puffing, jesting, and talking about what they wish to do, but never actually do.

For context for Count 3, the group was having a thoughtful discussion started by a person named "Swissdiscipline" who posed the question:

> How does everyone envisage the next phase of NS struggle in North
> America starting from the present, what should be occurring in the
> next year? What would you personally and in concert with your

brothers ideally be spearheading? Be specific.

Another member named "Parabellum" responds with "I think the next stage is collapse, and Weimar conditions in America before any possibility of guerilla tactics become relevant, but then again that's just my opinion … the age old question of which will come first, collapse or revolution?

Mr. Suzuki responds that "Collapse will come first no doubt," arguing that revolution will only occur when ordinary life is no longer obtainable and praising COVID-19 because it limited social interactions in a way that has never been seen before. After approximately twenty-five messages between the members, Mr. Suzuki responds with the "threat" text at issue. His response is a direct answer to the original question of "which will come first, collapse or revolution?" posed by "Parabellum." While the substance of the text is troubling and threat-like, it is not a direct threat when read in context of the conversation. When "Swissdiscipline" asked for comments from others about what they envision for the future, Mr. Suzuki responds with his wishes for the "struggle," though the comments are not threats.

As to Count 4, while the substance of this text is concededly the most disturbing, there is no threat. Just like in Count 3, Mr. Suzuki's comments do not rise to the level of threat. He is not stating he is going to go and blow up a building; he is not stating that he is going to purchase or build an IED; he is not stating anything other than an idea or thought. His opinion on how to most practically start a method of terror is not a threat to do the same.

**Count 5 does not qualify as a document sufficient for prosecution**

Regarding the fifth count of the Indictment, the Navy Aberrant Behavior Screening Certificate is not a document that should be deemed to satisfy the elements of 18 U.S.C. § 1001, which states:

> Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and

> willfully makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

The United States Navy Aberrant Behavior Screening Certificate (NAVCRUIT 1130/120 (Rev. 05-2010)) initialed by Mr. Suzuki is not a document that 18 U.S.C. § 1001 intended to criminalize. Mr. Suzuki initialed "NO" beside the question: "I have been/am now a member of a racially biased group or an organization that advocated the degradation of cultures or human races other than my own." The Screening Certificate must be filled out by the applicant and turned in to the recruiter. If the applicant has answered YES to any question, the recruiter may ask more questions to the applicant regarding their answer. *See 2008 Unclassified Navy Recruiting Manual*, https://navytribe.files.wordpress.com/2015/11/cnrcinst-1130-8-vol-iii.pdf. (A "Yes" response requires a handwritten statement explaining the applicant's degree of involvement and participation in any criminal activity. The NAVCRUITDIST CO must personally interview and determine member's enlistment eligibility for Naval service after a full review of the member's enlistment application (kit).) The Screening Certificate at issue does not trigger a formal background interview by federal agents.

The Screening Certificate provides no notice that a false statement will result in a § 1001 charge. To advance in the Navy recruitment process, a person must also complete an exhaustive background questionnaire, an SF-86 form, that explains:

> Withholding, misrepresenting, or falsifying information may also negatively affect your employment prospects and job status, and the potential consequences include, but are not limited to, removal, debarment from Federal service, loss of eligibility for access to classified information, or **prosecution**.

*See* attached SF-86. On the following page, there is a section titled, "Penalties for Inaccurate or False Statements" which informs the applicant that prosecution could result pursuant to 18 U.S.C. § 1001. Had this been the document Mr. Suzuki filled out, then a § 1001 charge would have been appropriate because the information in the SF-86 Form is relied upon by federal agencies in

–11–

conducting background checks into the fitness of its screeners. *United States v. Riccio*, 529 F.3d 40, 42 (1st Cir. 2008), modified on reconsideration, 567 F.3d 39 (1st Cir. 2009). Concealed prior information impedes investigators from discovering whether any problems might reflect negatively on the trustworthiness of a screener. *Id*. Mr. Suzuki completed an SF-86 truthfully.

## CONCLUSION

For the foregoing reasons, Mr. Suzuki respectfully submits that his speech is protected by the First Amendment and the instant criminal case should be dismissed.

Respectfully submitted, this the 19th day of May, 2022.

Respectfully submitted,

AUBREY SUZUKI

 */s/ Gregory S. Park*
GREGORY S. PARK, MSB No. 9419
Assistant Federal Public Defender
1200 Jefferson Avenue, Suite 100
Oxford, Mississippi 38655
Telephone: (662) 236-2889
Fax: (662) 234-0428
greg_park@fd.org

## CERTIFICATE OF SERVICE

I, Gregory S. Park, attorney for the Defendant, Aubrey S. Suzuki, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which provided notification to all parties of record.

Dated this the 19th day of May, 2022.

 */s/ Gregory S. Park*
GREGORY S. PARK
Assistant Federal Public Defender