## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**UNITED STATES OF AMERICA**

**V.**                                                    **CRIMINAL NO. 3:21-cr-077**

**AUBREY S. SUZUKI**

---

### GOVERNMENT'S RESPONSE IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS

---

### INTRODUCTION

The defendant, Aubrey SUZUKI, is charged in a five count Indictment with one count of threatening federal officials (18 U.S.C. § 115(a)(1)(B); three counts of transmitting threatening communications in interstate commerce (18 U.S.C. § 875(c)); and one count of making a material false statement to the United States Navy (18 U.S.C. § 1001(a)(2)).  All of the charges in the Indictment stem from SUZUKI's involvement with a white supremacist organization known as the National Socialist Order ("NSO").

The government would expect the proof at trial to show the following:

Atomwaffen Division ("AWD") is a white supremacist organization seeking to promote a white supremacist extremist ideology through force and/or violence in violation of federal law. Members of AWD have actively attempted to further their political and social goals to prepare for a perceived eventual race war, wholly, or in part through activities utilizing the use of force or violence as well as the procurement of weapons and organized training in weapons and tactics. Around March 2020, AWD members were working to establish a new group called National Socialist Order ("NSO").

In July 2020, an individual using the online handle "ArchRain" was listed as a charter member of NSO on a teleconference call with NSO members.  As described in more detail below, ArchRain was later identified as the defendant, Aubrey SUZUKI.

"Wire" is an encrypted messaging platform headquartered outside the United States that allows users to exchange messages over the internet from anywhere with internet access. Messages sent and received through the Wire platform travel in interstate commerce.

In August 2020, ArchRain participated in the new NSO online group chat on Wire with multiple FBI racially motivated violent extremist predicated subjects.

The Federal Bureau of Investigation (FBI) uses various methods to investigate domestic terrorism activity in the United States.  A confidential human source ("CHS") is an individual cooperating with the FBI and personally participating in online messaging activities with racially motivated violent extremists.  In this case, a CHS participated in the Wire chat group and actually viewed the messages.  The CHS saved screenshots when possible of the pertinent messages in the Wire chat.

ArchRain made numerous posts referencing nazi and white supremacist ideology, including but not limited to the following:









The book entitled "Siege" by James Mason advocates murder and anarchy to destabilize the American government and promote white supremacist ideology. James Mason is a well-known neo-nazi in the United States.

In August 2020, ArchRain stated that he planned to obtain an assault rifle[1] and discussed bullet proof vests[2]:



---

[1] "AK" refers to an AK-47 style assault rifle and "AK mags" refers to ammunition magazines for an AK-47 style rifle

[2] The term "at least 5 mags mollyed to your vest" refers to strapping assault rifle ammunition magazines to a bullet proof vest.

In late August 2020, ArchRain posted the threat that forms the basis for Counts One and Two: "So when are we going to pull a Turner Diaries and drive a truck with explosives to the FBI headquarters"



In another post ArchRain used slurs in stating he wanted to murder African Americans, Spanish Speaking Americans, and Homosexual individuals, while also "blowing up the system," this threat forms the basis for Count Three:



On December 21, 2020, ArchRain posted the threat that forms the basis for Count Four, targeting specific types of buildings with "IED"[3] explosives:

---

[3] "IED" stands for Improvised Explosive Device. A term commonly used to describe homemade explosives used against American forces in Iraq and Afghanistan.





**Identification of "Archrain" as Aubrey Suzuki**

In August 2020, ArchRain stated he had sent $30 USD to Cameron Shea, an FBI subject arrested in February 2020 and eventually convicted of Conspiracy to Mail Threatening Communications and Commit Cyberstalking. Shea was a member of AWD.[4] The FBI requested information from Bureau of Prisons ("BOP") for monetary transactions for Shea in the amount of $30. BOP provided the name of the donor as "AUBREY SUZUKI", address 1151 Highway 51 N Lot 300, Nesbit, MS 38651, and telephone number 901-431-7182.

In addition to describing his $30 payment to Shea, ArchRain posted a photo of his receipt from BOP:



---

[4] https://www.justice.gov/opa/pr/leader-atomwaffen-conspiracy-sentenced-three-years-prison-threatening-journalists

On September 2, 2020, the FBI served a Grand Jury subpoena to AT&T wireless for subscriber information related to number 901-431-7182, the cell phone number connected to the $30 donation to Cameron Shea. AT&T Wireless responded to the subpoena and identified Aubrey SUZUKI as the user of 901-431-7182 with address 1151 Highway 51 N, Nesbit, MS 38651.

In various online chats, ArchRain described himself as a 19 y/o resident of North Mississippi. ArchRain also described himself as a large person who preferred full size weapons.

The FBI identified Aubrey SUZUKI's Mississippi driver's license information describing him as a 6'2" male weighing 262 lbs residing at 1151 Highway 51 N, Nesbit, Mississippi.

In early September 2020, the FBI began regular physical surveillance on 1151 Highway 51 N, Nesbit, Mississippi and installed two pole cams in and around the address 1151 Highway 51 N, Nesbit, Mississippi.

On September 30, 2020, United States Magistrate Judge Roy Percy signed a Ping Warrant authorizing the FBI to track the cell phone 901-431-7182 for thirty (30) days, followed by three extensions of time. After activating the Ping Warrant and in combination with physical surveillance, the FBI confirmed that Aubrey SUZUKI was using 901-431-7182 and that he resided at 1151 Highway 51 N, Nesbit, Mississippi.

Finally, agents with the FBI confirmed that SUZUKI was the user of the handle ArchRain. Following the November 2020 Presidential election, an FBI CHS, who had participated in the online chats, contacted SUZUKI as the user of the handle ArchRain using cell number 901-431-7182 and met SUZUKI in person in Memphis, Tennessee. The meeting was recorded on audio/video.

**Purchase of AR-15 Assault Rifle**

On February 9, 2021, FBI Agents attempted to interview SUZUKI at his residence in Nesbit, Mississippi. SUZUKI was present at his home address, 1151 Highway 51 N, Nesbit, Mississippi, in a mobile home on Lot 300 of Country Haven Mobile Home Park along with his mother. Agents spoke to SUZUKI'S mother and warned her regarding his dangerous online activity. Agents also attempted to speak to SUZUKI, who did not agree to an interview and was angry at the presence of federal law enforcement.

The FBI continued sporadic physical surveillance of SUZUKI until approximately May 15, 2021.

On Tuesday, July 13, 2021, Agents were notified by FBI Headquarters that SUZUKI had purchased a long gun at Weasel's Gun and Pawn in Nesbitt, Mississippi.

On July 14, 2021, FBI Agents visited Weasel's Gun and Pawn and discovered that SUZUKI had purchased a Smith and Wesson AR-15 assault rifle online through Smoky Mountain Guns and Ammo in Sevierville, Tennessee and arranged for the transfer of the firearm to Weasel's Gun and Pawn. Weasel's Gun and Pawn held the firearm for a three-day waiting period that expired on Saturday, July 17, 2021.

The owner of Weasel's Gun and Pawn informed Agents that he met SUZUKI when the firearm arrived at his shop and that SUZUKI was anxious to pick up the AR-15. On Monday, July 19, 2021, federal agents arrested SUZUKI via Complaint at Weasel's Gun and Pawn where he was attempting to take possession of the AR-15. SUZUKI made his initial appearance and was ordered to remain in pre-trial detention following his preliminary hearing and detention hearing. On August 25, 2021, the Grand Jury returned the five count Indictment against SUZUKI. The trial is currently set for June 13, 2022.

**ARGUMENT**

The First Amendment provides the right to freedom of expression. *See* U.S. Const. Amend. I. It forbids the government from punishing a person because of his or her speech. But the First Amendment does not protect speech, including symbolic speech, when the very uttering of the words constitutes a crime, such as when the words constitute a "true threat."

The Supreme Court recently reiterated that "[i]t is settled that the Constitution does not protect true threats." *Elonis v. United States*, 135 S. Ct. 2001, 2016 (2015). This is due to the importance of protecting individuals from even the fear of violence, which has the potential of disrupting a person's life and causing fear, even if the threat is not carried out. *See United States v. White*, 670 F.3d 498, 507 (4th Cir. 2012) (detailing harm caused by threats), abrogated in non-relevant part by *Elonis*, 135 S. Ct. 2001; *see also R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992) (citing *Watts v. United States*, 394 U.S. 705 (1969)) ("[T]hreats of violence are outside the First Amendment."); *Doe ex rel. Doe v. Pulaski County Special Sch Dist.*, 306 F.3d 616, 622 (8th Cir. 2002) ("[T]hreats of violence also fall within the realm of speech that the government can proscribe without offending the First Amendment.").

The Supreme Court has defined true threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003); *see also United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015).

To be prosecutable, a true threat must be a real threat, as opposed to a joke, an inelegant expression of anger, or "political hyperbole." *See United States v. Viefhaus*, 168 F.3d 392, 395 (10th Cir. 1999) (A "true threat" means "a serious threat as distinguished from words as mere political argument, idle talk or jest."); *United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997)

11

(defining true threat as "a serious threat as distinguished from words as mere political argument, idle talk or jest"); *United States v. Howell*, 719 F.2d 1258, 1260 (5th Cir. 1983) ("A true threat is a serious one, not uttered in jest, idle talk, or political argument."). Such a threat exists when a person expresses "an intention to inflict evil, injury, or damage on another." *United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir. 1989), *overruled on other grounds* by *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002). The mere fact that a statement is "vehement, caustic, and sometimes unpleasantly sharp" does not make it a threat. *See Watts*, 394 U.S. at 708 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

In general, the intent element of Section 875(c) requires a showing that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 135 S. Ct. at 2012. "The language of § 875(c) does not require that the threat be made directly to the intended target; it simply prohibits 'any threat to injure the person of another' made in interstate commerce." *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001). "It is the character and context of the threat that is the relevant test." *Id*. In *Morales*, the Fifth Circuit affirmed an 875(c) conviction based on a school shooting threat posted in an online chat with a complete stranger who had no connection to the school that was threatened. *Id*. at 285-86.

The statements charged in the Indictment are true threats and are not entitled to First Amendment protection. When SUZUKI sent the threatening communications he intended them as threats and knew that they would be taken as threats. The Motion to Dismiss should be denied.

I.     **The Defendant's Statements were True Threats**

The statements in this case are similar to that of the defendant in *United States v. Voneida*, 337 F. App'x 246 (3rd Cir. 2009) (unpublished).  In *Voneida*, the defendant was a university student who posted threatening statements and pictures to his MySpace page two days after the Virginia Tech shootings stating "someday: I'll make the Virginia incident look like a trip to an amusement park" and "the weary violent types who are sick of self-righteous, lecherous, arrogant, and debauched attitudes displayed by [A]merican youth would band together with me for a day, and allow everyone at schools and universities across the nation to reap the bitter fruit of the seeds that they have been sowing for so long."  *Voneida*, 337 F. App'x at 248.  Defendant also posted "Virginia Tech Massacre-They got what they deserved" and included a poem he dedicated to the Virginia Tech shooter.  *Id*.  Students who had access to his MySpace page were "scared for the people, the school he attended" and reported the statements to the police.  *Id*.  While the defendant contended that his threats were never sent directly to anyone, there was no "imminent prospect of execution," and the threats were just a "college student's unfledged attempt at counterculture humor," the Third Circuit held that defendant's online postings of statements and pictures were true threats given the context of the statements occurring only two days after the tragic shootings at Virginia Tech.  *Id*. at 248-49.

Another similar case is *United States v. Turner*, 720 F.3d 411 (2d Cir. 2013).  In *Turner*, the defendant published a blog post in response to a Seventh Circuit decision on the Second Amendment:

> All the years of peaceful legal challenges; all the years of peaceful appeals; all the years of peacefully and lawfully lobbying federal and state legislators, to achieve the penultimate goal of finally interpreting the meaning of the Second Amendment, only to have it all thrown in the trash by three Appellate Judges in a manner so sleazy and cunning as to deserve the ultimate response.
> ...

13

> The government—and especially these three Judges—are cunning, ruthless, untrustworthy, disloyal, unpatriotic, deceitful scum. Their entire reason for existing is to accrue unto themselves, power over everything.
>
> The only thing that has ever stood in the way of their achieving ultimate power is the fact that We The People have guns. Now, that is very much in jeopardy.
>
> Government lies, cheats, manipulates, twists and outright disobeys the supreme law and founding documents of this land because they have not, in our lifetime, faced REAL free men willing to walk up to them and kill them for their defiance and disobedience.
>
> Thomas Jefferson, one of our Founding Fathers, told us "The tree of liberty must be replenished from time to time with the blood of tyrants and patriots." It is time to replenish the tree!
>
> Let me be the first to say this plainly: These Judges deserve to be killed. Their blood will replenish the tree of liberty. A small price to pay to assure freedom for millions.
>
> *Turner*, 720 F.3d at 414-15.

The defendant then referenced an infamous murder of a federal judge in Chicago. *Id.* The defendant argued that his statements could only be read as a political opinion but the Second Circuit disagreed, finding that his statements were a true threat and affirming his conviction of threatening federal officials in violation of Title 18, United States Code, § 115(a)(1)(B). *Id.*

In *United States v. Viefhaus*, the defendant and his fiancée formed a white supremacy organization in Tulsa, Oklahoma, known as the National Socialist Alliance of Oklahoma, of which they were the only members. *Viefhaus*, 168 F.3d 392, 394 (10th Cir. 1999). They promoted white racial superiority and advocated destruction of blacks, Jews, homosexuals, and federal law enforcement officials. *Id.* The defendant left hotline messages espousing his views. *Id.* The message for which he was indicted stated:

> It is time for all white people to realize that the current system of government is beyond repair. Our revolution is not about fixing this system, but to absolutely destroy it, by any means necessary. Only then can we build an Aryan society for our children and grandchildren. The first major step in solidifying the revolutionary mentality is to understand that there are only two classes in life, those who support our cause and the enemy. As in the case of the bombing of the Murrah Federal Building, the revolutionary understands and accepts no matter how painful that innocent people must be considered expendable if necessary, in order to successfully complete any action.... This is a war ... racial ... holy war. As an added ultimatum to those of you who are still unwilling to pick up a sword, a letter

from a high ranking revolutionary commander has been written and received demanding that action be taken against the government by all white warriors by December 15th and if this action is not taken, bombs will be activated in 15 pre-selected major U.S. cities. That means December 15, 1996, one week from today. In [other] words, this war is going to start with or without you. For all of you out there that have been bragging about being ready and willing to jump in when the time comes, well you better lace up your jump boots.

The Tenth Circuit held that, "[a]lthough the bulk of the recorded message at issue is comprised of crude political rhetoric, Viefhaus crossed the threshold from political rhetoric to criminal threat when he stated unequivocally that fifteen cities would be bombed. The fact that a specific threat accompanies pure political speech does not shield a defendant from culpability." *Id.* at 396. In the same way, SUZUKI's statements in this case crossed the threshold from crude political rhetoric to criminal threats, and the Motion to Dismiss should be denied.

### A.    Counts One and Two

"So when are we going to pull a Turner Diaries and drive a truck with explosives to the FBI headquarters"

"The Turner Diaries" is a 1978 novel depicting a violent revolution in the United States which leads to the overthrow of the Federal Government. Specifically, "The Turner Diaries" includes a section describing an attack on the headquarters of the FBI. The term "Turner Diaries" is often used by anti-government extremists in the United States. "The Turner Diaries" was one of the inspirations behind Timothy McVeigh's attack on the federal building in Oklahoma City. McVeigh detonated a rental truck near the base of the federal building, killing 168 people.[5] When McVeigh was arrested, he had a copy of "The Turner Diaries" with him in his car, and the book was an exhibit in McVeigh's trial.

---

[5] https://www.nytimes.com/2001/06/09/us/behind-a-book-that-inspired-mcveigh.html

The context of this message is an online chat with neo-nazi white supremacists who want to start a race war and overthrow the federal government. If there was any confusion about what "pull a Turner Diaries" meant Suzuki eliminated that confusion when he said "and drive a truck with explosives to the FBI headquarters." In his Motion to Dismiss, the defendant claims this statement was made in "jest." There is no indication that the defendant was joking. This is an extreme statement of violence. It is so extreme that a fellow member of the chat group thought ArchRain might be a federal agent in the chat. The Turner Diaries inspired one of the worst acts of domestic terrorism in United States history when Timothy McVeigh drove a truck full of explosives to the federal building in Oklahoma City. This is not a joke. At a minimum, this is a question for the jury.

### B. Count Three

> "Honestly I don't want to be a normal person. I want to breathe revolution. I want to be in the middle of the boondocks with my mates killing niggers spics faggots and blowing up the system"

Unfortunately, the context for this statement is a culture in which lone gunmen regularly enter public spaces and assassinate civilians. Schools, churches, synagogues, grocery stores and concerts have all been invaded by young men with assault rifles, resulting in the mass murder of innocent strangers.[6] There is absolutely nothing about this statement that can be considered "jest" or "hyperbole." This statement is amplified by the fact that the defendant purchased an AR-15 assault rifle.

This statement is a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" and is not protected by the First Amendment.

---

[6] Just in the time this response was being prepared, a lone gunman killed ten people in a grocery store in Buffalo, New York, specifically targeting and killing African Americans. A few days later, another lone gunman killed nineteen children and two teachers in an elementary school in Texas.

*See Black*, 538 U.S. at 359. The defendant is discussing the murder of racial minorities. The First Amendment does not protect your right to threaten to kill minorities. This statement is a true threat. At a minimum, it is a question that should be decided by the jury.

### C. Count Four

"I think IEDs will be the most practical method of terror to start out with. Worked very well for al-Qaeda. Target majority nigger or jewish buildings, synagogues, federal establishments, etc."

Again, the defendant is chatting with white supremacists about starting a revolution and overthrowing the government. They are not engaged in a "thoughtful discussion" as the Motion to Dismiss claims. There is nothing funny or in "jest" about planting IEDs in places were African Americans and Jewish people gather. The defendant is not simply expressing an unpopular political opinion. This statement is also a "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" and is not protected by the First Amendment. *See Black*, 538 U.S. at 359. He is threatening to plant explosive devices in public spaces and houses of worship. This statement is a true threat. At a minimum, it is a question that should be decided by the jury.

### II. COUNT FIVE STATES A VALID CHARGE OF 18 U.S.C. § 1001

While he was actively participating in the online chats as a member of the National Socialist Order, SUZUKI attempted to join the United States Navy. On January 5, 2021, SUZUKI completed a "United States Navy Aberrant Behavior Screening Certificate" in connection with his application to join the Navy. SUZUKI completed the form in the Navy recruitment office in Southaven, Mississippi.

SUZUKI answered NO to the first question: "I have been/am now a member of a racially biased group or an organization that advocated the degradation of cultures of human races other than my own" as seen in the following screenshot:

**Section II - Definitions**

Aberrant Behavior. Involvement with groups or organizations advocating violence or illegal activities. Participation in such activities, whether with such groups or individually.

Racially Biased Group. A group or organization, which exhibits a negative disposition and prejudicial attitudes against an entire class of persons based solely on racial differences.

Gang Related Violence. Violent activity or behavior stemming from involvement in an association with an organized group which advocates or engages in criminal activity.

Hate Crimes. Criminal behavior or activities, which illegally discriminate on the basis of race, creed, gender or national origin.

| Section III - Aberrant Behavior | Applicant Initial Yes | Applicant Initial No |
|---|---|---|
| 1. I have been/am now a member of a racially biased group or an organization that advocated the degradation of cultures or human races other than my own. | | ASS |
| 2. I have participated in violent acts committed against a person of a different race. | | ASS |
| 3. I have been cited, charged or arrested for a hate crime. | | ASS |
| 4. I have been or am now a member of a gang. | | ASS |
| 5. I have participated in an initiation to gain acceptance to a group or gang. | | ASS |
| 6. I have committed illegal acts to gain acceptance to a group or gang. | | ASS |
| 7. I certify that I have completed this certificate honestly of my own free will, without concealing any information. | ASS | |

SUZUKI, AUBREY, SAKAI

Tamper Evident Biometric Signature | Digitally signed by Tamper Evident Biometric Signature Date: 2020.10.05 15:18:20 -05'00' | 20201005

Applicant Signature | Date

**Section IV - Recruiter Certification**

I certify that the above applicant signed this certificate of their own free will after telling me that their answers are complete and true.

| ET1 DEMAREST, NICOLE, ROSE | DEMAREST.NICOLE.ROSE.15 01222395 | Digitally signed by DEMAREST.NICOLE.ROSE.1501222395 Date: 2020.10.05 15:18:55 -05'00' | 20201005 |
|---|---|---|---|
| Type/Print Name of Recruiter (Last, First, Middle): | Recruiter Signature | | Date |

SUZUKI'S statement on the aberrant behavior form was materially false in that he had been a member of a racially biased group and was actively participating in a racially biased group at that time. Furthermore, SUZUKI made multiple references to joining the military in his online chats with other known white supremacists.

Without citing any authority, the defendant claims that the aberrant behavior form cannot be used to support a prosecution under Title 18, United States Code, Section 1001. The defendant's claim is incorrect. The defendant made a materially false statement to the Navy. He claimed that he was not a member of a racially biased group.

Title 18, United States Code, Section 1001(a)(2) requires the following elements:

*First*: That the defendant made a false statement to the United States Navy regarding a matter within its jurisdiction;

*Second*: That the defendant made the statement knowing that it was false;

*Third*: That the statement was material; and

*Fourth*: That the defendant made the false statement willfully for the purpose of misleading the United States Navy.

See Fifth Cir. Pattern Jury Instruction 2.45

There is no requirement that the statement be made on any particular form or in any particular method. The defendant is essentially claiming that Count Five of the Indictment has failed to state an offense. "The Sixth Amendment requires that an indictment (1) enumerate each prima facie element of the charged offense; (2) fairly inform the defendant of the charges filed against him; and (3) provide the defendant with a double jeopardy defense against future prosecutions." *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996). The Indictment sufficiently alleges the elements of Title 18, United States Code, Section 1001(a)(2) and informs the defendant of the charges filed against him. It is premature for the defendant to claim that the government cannot prove that he committed the offense charged in Count Five. The Motion to Dismiss should be denied.

**CONCLUSION**

For the foregoing reasons, the defendant's Motion to Dismiss should be denied.

Dated this the 27th day of May, 2022.

<div style="margin-left: 40%;">

Respectfully submitted,
CLAY JOYNER
United States Attorney
MS Bar No. 10316

</div>

By:    */s/ Clayton A. Dabbs*
             CLAYTON A. DABBS
             Assistant United States Attorney
             MS Bar No. 101537
             900 Jefferson Avenue, Oxford MS 38655

## CERTIFICATE OF SERVICE

I, Clayton A. Dabbs, Assistant United States Attorney for the Northern District of Mississippi, hereby certify that I have this day electronically filed the foregoing **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Court using the ECF system which sent notification of such filing to the following:

> Gregory S. Park
> Assistant Federal Public Defender
> greg_park@fd.org

This the 27th day of May, 2022.

<div style="margin-left:40%">

*/s/ Clayton A. Dabbs*_____
CLAYTON A. DABBS
Assistant United States Attorney

</div>